MHN

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE SUBPOENAS TO PROFESSIONAL SALES & MARKETING GROUP, INC, | Case No. 09 C 4864 |
| | Judge Charles R. Norgle, Sr. |
| TOFASCO OF AMERICA, INC., and MAC SPORTS, INC., | Magistrate Judge Arlander Keys |
| Movants. | |

## MEMORANDUM OPINION AND ORDER

On August 7, 2009, Tofasco of America, Inc. and Mac Sports (hereinafter collectively referred to as "Mac Sports") initiated these proceedings by filing a motion to enforce Professional Sales & Marketing Group, Inc.'s compliance with two subpoenas issued by this Court, in accordance with Federal Rule of Civil Procedure 45. The Court issued the subpoenas in connection with a patent and trade dress infringement suit pending in the United States District Court for the Eastern District of Virginia in which Mac Sports is the defendant; the plaintiff is Swimways Corporation, which designs, manufactures and sells leisure and recreational products, including collapsible chairs. At the time that suit was filed, Swimways and PSM had a business relationship whereby PSM had certain rights to market, source, produce and sell one or more of Swimways' chairs, though that relationship had soured, leading to yet another lawsuit - this one filed by PSM in Cook County Circuit Court, alleging breach of contract and

seeking to enjoin Swimways from selling the subject collapsible chairs.

The subpoenas, issued by the court on June 15, 2009, required PSM to produce documents by June 29, 2009 and to produce a 30(b)(6) witness for deposition on July 13, 2009. The subpoena seeking the production of documents contained ten requests, all relating to the design, creation, development, marketing, manufacturing and sale of Canopy Chairs, including the Renetto Canopy Chair. The subpoena seeking testimony requested information on 24 topics, all relating to communications and dealings PSM had with Renetto and Swimways concerning the design, creation, manufacture, sale, distribution and marketing of Canopy Chairs, including the Renetto Canopy Chair, as well as information concerning PSM's knowledge of the patents covering the chair and PSM's dealings with Renetto and Swimways.

The time for producing responsive documents came and went, yet PSM did not produce a single document; nor did PSM file written objections to the subpoenas or move to quash the subpoenas. At some point prior to July 2, 2009, counsel for PSM did speak with counsel for Mac Sports in Virginia (Victor Alsobrook of Leader Gorham) to convey PSM's position that the subpoenas were problematic because, in PSM's view, they were overly burdensome and sought confidential information. In as effort to address PSM's concerns about confidentiality and

relevance, Mr. Alsobrook forwarded copies of both the Virginia complaint and the protective order entered in that case. Yet PSM still did not produce any documents; nor did it file written objections or move to quash the subpoenas.

On July 2, 2009, in response to an email inquiry from Mac Sports, counsel for PSM (Louis Bernstein of Much Shelist) advised that, in his view, "it is obvious your client is requesting confidential information that is inappropriate to share with a competitor, particularly when my client is not a party to this case." Mac Sports' Motion to Enforce, Exhibit 5. In response, Mr. Alsobrook sent a letter demanding, pursuant to the subpoena, that PSM produce documents by July 8, 2009 and reminding PSM of its obligation to produce a 30(b)(6) witness on July 13, 2009.

Thereafter, Mac Sports attempted to narrow its discovery requests to placate PSM, but PSM continued to stonewall and the communications between the parties' attorneys became less and less civil. On August 3, 2009, the parties had a final, formal "meet and confer"; during that call, Mac Sports further refined the areas of inquiry and PSM agreed to produce responsive documents by August 5, 2009. August 5th came and went, and still PSM did not produce documents. The next day, August 6, 2009, counsel for Mac Sports sent an email recapping the agreement reached on August 3rd. On August 7, 2009, Mac Sports initiated this action, apparently concluding that PSM would not comply

absent Court intervention.

In its initial filing, Mac Sports sought an order requiring PSM to produce documents and a 30(b)(6) witness, as well as an order holding PSM in contempt and requiring PSM to reimburse Mac Sports for the attorneys' fees and costs it incurred in having to bring the motion. The matter was assigned to Judge Charles R. Norgle, and a hearing on the motion to enforce was set for August 14, 2009. On that date, shortly before the motion to enforce was called to be heard, PSM provided counsel for Mac Sports with some of the documents subpoenaed. Based upon that proffer, Judge Norgle dismissed as moot the motion to enforce.

Shortly thereafter, Mac Sports filed the instant motion, seeking to recover from PSM the reasonable expenses it incurred in having to pursue the motion to enforce in the first place. That motion, now fully briefed by the parties, has been referred to this Court for ruling. In its response to Mac Sports' motion, PSM included a cross-motion for an award of its attorneys' fees incurred in responding to the subpoena.

## Discussion

Federal Rule of Civil Procedure 45 authorizes the issuance of subpoenas compelling a witness's appearance for deposition and compelling the production of documents. The Rule spells out certain requirements for the issuance of a valid subpoena, and there is no question that those requirements were met here. The

Rule also provides that the party served with the subpoena may object. But the rule requires that any objection must be made in writing and must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). The Rule provides that, if the served party does not comply, the serving party may move the issuing court for an order compelling production or inspection" but the order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed R Civ. P. 45(c)(2)(B)(ii).

Rule 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery" and that the motion "for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(1), (2). The Rule further provides that, if the motion to compel

> is granted - *or if the disclosure or requested discovery is provided after the motion was filed* - the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>   (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>   (ii)   the opposing party's nondisclosure, response, or objection was substantially

5

>                   justified; or
> (iii)       other circumstances make a award of
>             expenses unjust.

Fed R Civ. P. 37(a)(5)(A)(emphasis added).

In response to Mac Sports' motion, PSM first argues that the subpoena for documents was problematic because it required the production of documents containing, among other things, trade secrets. PSM represents that, "[w]hen faced with a subpoena seeking information relating to virtually every facet of its Canopy Chair business, issued by one its major competitors, it became concerned about the effect disclosure would have on its bargaining position in the sale of its products." PSM's Response/Cross-Motion, pp. 5-6. And that concern is understandable. But the Rules provide a means for addressing those concerns. Rule 45 addresses this issue and provides a means to avoid the result PSM foresaw: the Rule provides that "[t]o protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires: (I) disclosing a trade secret or other confidential research, development, or commercial information." Thus, under the rule, it would have been entirely appropriate for PSM to file a motion seeking to modify or quash the subpoena on this basis. It was not appropriate, however, for PSM to ignore the subpoena entirely.

PSM seems to argue that, as a non-party, it should not be

sanctioned. But Rule 37 does not distinguish between parties and non-parties. PSM was served with a valid court order, and, regardless of its status, the law imposes an obligation on it to respond.

PSM also argues that it could not have responded sooner than it did because it was attempting to get clearance from Swimways. But the subpoenas were served on June 16, 2009 and had a return date of June 29, 2009; yet PSM waited until July 6th to send a letter to Swimways, making this argument ring hollow.

Additionally, PSM claims that Mac Sports refused to narrow the issues, opting instead to simply reword the requests. That is simply false. As is clear from the email exchanges, Mac Sports limited the request to a particular model of canopy chair, sold during a particular period of time (a 2 year span). PSM tries to portray itself as an innocent - toiling away at resolving the issues and making good faith attempts to comply with its obligations under the subpoena. But the record belies that portrayal.

Finally, PSM argues that counsel for Mac Sports has gone beyond zealous advocacy. The Court cannot agree. An argument may certainly be made that Mac Sports could have simply been content to receive the documents PSM provided on August 14, 2009. But the file documents also suggest that PSM handled this matter in a way that was obstreperous and obfuscatory, a deliberate

attempt to stonewall and force Mac Sports to maximize its expenditures of time and energy. The fact that PSM turned over the documents at the 11th hour, forcing Mac Sports to come to court to collect them, certainly supports that notion. Refusing to turn a blind eye to these tactics – and wanting to recoup the money wasted because of these tactics – is not unreasonable, and the Court cannot fault Mac Sports for declining to walk away once PSM delivered the documents. The simple truth is that PSM could have (and should have) handled this matter better; perhaps next time, it will think twice before it ignores a court order.

"The great operative principle of Rule 37[][1] is that the loser pays." *Rickels v City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994)(citing Charles Alan Wright & Arthur R Miller, 8 Federal Practice & Procedure § 2288 at 787 (1970)). This is true unless the loser's non-compliance was somehow justified or unless circumstances otherwise make fee-shifting unjust. Neither is true here, and the Court, therefore, grants Mac Sports' motion for an award of expenses.

Having determined that PSM must reimburse Mac Sports for the reasonable expenses it incurred, the Court considers what amount to award. Mac Sports seeks an award of $5,368.50, and, after reviewing the itemized time sheets for the lawyers involved, the

---

[1] *Rickels* dealt specifically with paragraph (a)(4), which has since become (a)(5).

Court is satisfied that the time spent and the rates billed are reasonable. PSM does not argue otherwise. And, indeed, it would have been entirely hypocritical for PSM to challenge the reasonableness of the fees and rates charged, given that it has filed a cross-motion seeking almost four times the amount sought by Mac Sports. The Court will not award PSM fees – to the extent it incurred unreasonable expenses in responding to Mac Sports' subpoenas, it has no one to blame but itself.

## Conclusion

For the reasons set forth above, Mac Sports' Motion for Award of Reasonable Expenses Incurred to Enforce PSM's Compliance with Rule 45 Subpoena [#9] is granted. Mac Sports is awarded $5,368.50. PSM's Cross-Motion for Reasonable Attorneys' Fees [#12] is denied.

Date: April 9, 2010

ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge